# EXHIBIT A

## IN THE CIRCUIT COURT OF
## MIAMI-DADE COUNTY, FLORIDA

JONATHAN HARRINGTON,

     Plaintiff,

                                  CASE NO.: PENDING

vs.

Veritext, LLC

     Defendant

_____ /

## COMPLAINT

     Plaintiff, JONATHAN HARRINGTON, sues the Defendant and alleges:

## JURISDICTION IS PROPER IN MIAMI-DADE COUNTY

     The defendant's fraudulent conduct giving rise to accrual of this cause of action occurred in Miami-Dade County, so this Court has jurisdiction. Fla. Stat. § 47.011.

## THE DEFENDANT BREACHED ITS CONTRACT WITH FRAUD

     The Defendant presented to the Florida Board of Bar Examiners (FBBE), an agency of the Florida Supreme Court, an official transcript which is a complete fraud and a total forgery, as conclusively demonstrated in this complaint.

1

## <u>ANALYSIS OF UNDISPUTED FACTS</u>

### I.    **Veritext's Terror Tactics**

Veritext intimidated and harassed me by deceiving and manipulating the FBBE's general counsel into sending armed police to my door for a "wellness check." The police asked about Veritext, not my wellness, and falsely stated I had been to transcriptionist Mabel Ruano's home that day.

### II.    **Facial Evidence of Fraud**

Fraud is readily apparent from the four corners of the fraudulent transcript ("FT").

On <u>FT 187:1</u>, an asterisk (*) appears before the "Q" marking a question.[1] This is the only asterisk, and it is not indexed even though ampersands (&) are.[2] <u>FT 275|1</u> (index, page 275, column 1).

The first page shows no ending time and displays "a.m." *before* "8:07." <u>FT 1:19</u>. The font is the smallest on this page: 11. The index

---

[1] Veritext staff stated this symbol could be used indicate the audio was unclear to the court reporter. They also stated some portions of the transcript were "confidential," confirming they were deleted from the transcript.

[2] Dollars signs ($) are not indexed, either, suggesting they were added to the transcript after the index was compiled.

is counter-intuitively the largest font, 15, and the remainder of the transcript is size 13 font.

The paper copy of the transcript which Veritext supplied the FBBE is stamped simply "Certified Copy" with no indication who certified what, when. However, a transcript by the purported court Mabel Ruano in 2020 for Veritext indicated her certification *does not* apply to reproductions.[3] The instant transcript does not even claim to be "complete." FT 274.

The PDF the FBBE sent has Ruano's blue signature, FT 274, but the signature is identical to the one she produced in 2020, including accompaniment by the same invisible text "<%17385,Signature%>".[4] That number (17385) corresponds to George Newell's notary ID, expired for decades. Ruano's commission could not expire April 28th, 2028 as claimed because they only last four years. The real court reporter's name was used at least once by

_____

[3] Docket entry in Guillermo Chow v. Citizens Property Insurance Corp., Eleventh Circuit, Miami Dade County Case No. 2018-042689-CA-01) ("Ruano's 2020 Transcript") at 19 (certifying transcriptionist is not employed by any party's attorney, is not interested in the outcome of the dispute, and indicating that certification does not apply to "any reproduction . . . by any means . . ."). None of these representations are present here.
[4] "17385" and "signature" are indexed accurately despite being invisible.

John Dierking but appears nowhere in the transcript. Upon investigation, Ms. Ruano was discovered to be approximately 20 years older than that court reporter. During that investigation, Ms. Ruano readily claimed she mistyped her expiration year but refused to speak about anything else, repeatedly directing me to talk to "the Bar," not the board.[5] Her confession to mistyping her expiration year is unpersuasive for several reasons. First, repetitious text like this is usually not typed manually. Second, her signature is digital, so accompanying parts are almost certainly automated. Third, Veritext was informed of the impossible expiration and quickly claimed it was her typo, establishing her motive to lie on her employer's. Fourth, she was instructed not to talk to me by the FBBE, yet she confessed without pausing to even read and consider the error.

Presiding Officer Dierking's ruling on an objection on FT 170:19-171:18 is absent. He is "MR. DIERKING" on these pages but "PRESIDING OFFICER DIERKING" most everywhere else.[6] "MR.

---

[5] The invisible formatted table, discussed infra, FT 274:1-7, ends right before "Florida Board of Bar Examiners." This may bear on her confusion over whom the assignment was for, and that confusion may bear on the digital formatting of the Certificate.

[6] He is referred to as "MR. DIERKING" only on FT 136:20,25

DIERKING:" first appears on FT 136:25. The text of FT 136:15-23 is perfectly duplicated except changing "PRESIDING OFFICER DIERKING" to "MR. DIERKING." This shows the change arose through manipulating the transcript such as through this duplication and other rampant revisions described herein. Immediately after the duplication, according to the transcript, "(A break was taken)AAA [sic]". There is no indication how long[7] the break was, when it occurred, or what "AAA" means. Like the inexplicable "AAA," "BBB" appears on FT 158:1. Both portions are prime targets for forgery and fraud because the first ("AAA") indicates the beginning of Mr. McElroy's cross examination, which Veritext completely reorganized to its own liking, and the latter ("BBB") rewrites his attempts to get me to call Rita Florez "a liar."

---

(duplication with name change); FT 170:23 (FBBE questioning about Hamas); FT 171:22 ("Can we refer directly to [a] deposition?"); and FT 229:7 (fabricated question nestled between uses of "PRESIDING OFFICER DIERKING"). In reality, Mr. Dierking asked only two questions the entire hearing.

[7] FT 153:16 specifies "A brief break was taken" but fails to indicate that the reason was due to an intrusion by hotel staff. When I returned after this "brief break," my Hyatt Regency stationery was missing. I used that stationery to take notes given well documented memory problems. I can remember at least one word: "disability." This word is used exactly once in the entire purported transcript but was testified to extensively.

Observe <u>FT 158:1-5</u> ("Right. Right." // "Yes. Yes.") (anomalously duplicated responses). A simple explanation is that "AAA" and "BBB" are placeholders demarcating the bounds of one round of fraud, the twenty-two pages in between, tracks the fraudsters forgot to cover.

My response to the request of the court reporter to "repeat that" is indented for sixteen consecutive lines. <u>FT 64:20-65:11</u>.

On <u>FT 215:24</u>, Jane A. Rose purportedly says "So going back to what Ms. Rose was pointing out . . ." [sic]. Like the changes to Mr. Dierking's title, this shows Veritext's fraudulent reorganization and rewriting of the entire transcript. Questions by "MS. DICKSON" bookend this foible, indicating someone forgot to fraudulently change "MS. ROSE" to "MS. DICKSON" while re-ascribing questions. On <u>FT 205:11-12</u>, Ms. Rose states "[W]e talked about Adderall. It's in the record. So I know there are prescription[s] . . ." This was the first time in the hearing this medicine was mentioned, which is why Ms. Rose added "It's in the record." *Compare with* <u>FT 35:24</u>; <u>FT 123:25</u> ("stimulant medicine"). And yet, Ms. Rose also uses the name brand of the medicine half a dozen pages earlier.

<u>FT 199:12,15</u>. These two areas of the transcript provide strong evidence that the entire thing is a fraud because they indicate the depth and breadth of the rewriting and reorganizing. They indicate questions were re-attributed to whichever panelist the fraudster saw fit and enormous portions rampantly reorganized.

These facts may also explain why questioning by the panel is not in the table of contents (TOC) on <u>FT 2:1-7</u>.[8] If there was ever a TOC for panelists' questions, manipulation rendered it unworkable.

Next, according to the transcript, Mr. Fernando S. Aron was not invited to ask questions. In reality, he was offered the first opportunity because he was seated to the "far left"[9] of Presiding Officer Dierking, <u>FT 4:19-20</u>, contra <u>FT 193:25-194:2</u> ("starting to my left" not "far left"). Mr. Aron declined to ask even a single question, but that declination was not transcribed.

According to the transcript, Mr. McElroy delivered two closing arguments. <u>FT 243:17-18</u>; <u>FT 271:4</u>.

---

[8] Revisited with digital evidence, infra, and Appendix D.

[9] Entering the room, an observer would see Mr. Aron facing them at the right, followed by Ms. Rose to his left, then Judge Dickson, then Mr. Dierking, then Ms. Clay, and finally, Mr. Miller. A few feet and ninety degrees from Mr. Miller was the transcriptionist, a woman far younger than Mabel Ruano.

The transcript's failure achieve even self-consistency shows it is a total fraud and a forgery, but digital forensics paint an even more compelling picture.

### III.   <u>Digital Evidence</u>

#### A. <u>Methods</u>

Readers can display the hidden features in the PDF of the fraudulent transcript by: (1) converting it to a Microsoft Word ("Word") document with Adobe Acrobat (or free online software); (2) enabling show/hide (CTRL+SHIFT+8) in Word; (3) Navigating "Home" -> "Borders" (click dropdown) -> "All Borders;"[10] (4) Navigating "File" -> "Options" -> "Advanced" -> "Show Document Content" -> "Show Text Boundaries" (check the box).[11]

This reveals a wealth of information via metadata encoded in the actual text of the document, which is not removable by ordinary means of scrubbing metadata.

Of particular note are "end of cell" characters ("EOCCs") that accompany tables. They resemble a circle with four protruding lines

---

[10] "Select all" or "CTRL+A" is sometimes also needed first.

[11] The Court should bear in mind that this process reversibly affects the pagination of the document but only shows hidden features that were already there. It does not add or change anything.

at the 2, 4, 8, and 10 o'clock positions. The inconsistent use of these characters versus paragraph symbols which *look* the same (i.e., invisible) prove that Veritext fraudulently altered the transcript. See <u>Appendix A, B</u>, (showing mixture of EOCCs and paragraph symbols in Certificate, <u>FT 274</u> and index <u>FT 361|1-2</u> ("y" to "z")).

**B. <u>Digital Analysis the Text</u>**

In this era, transcription is largely automated, with voice recordings transposed into written words by computer software and then fine-tuned by the court reporter. This automated processes leads to the presence tables with EOCCs, whereas human editing instead produces new paragraph symbols with or without tables. This suggests, very roughly speaking, EOCCs indicate automaticity and paragraph symbols indicate, at a minimum, some human editing. A rampant, unexplained divergence between these indicators, accompanied with other indicators, suggests fraud.

Digitally, the "Certificate" on <u>FT 274</u> is amalgamative. *See* <u>Appendix A</u>. "Lines" 1-7 on <u>FT 274</u> are really a table with three columns and seven rows, and with EOCCs inside each of the 21 resulting cells.

The rest of FT 274 not a table at all, and paragraph symbols replace EOCCs. Lines 8-13 of FT 274 are formatted as a numbered list, but lines 14-25 are neither in a table *nor* a numbered list. The transcript's haphazard digital skeleton suggests manual editing to achieve the same look software produces, but only to the naked eye.

Every other table in the document is discussed in turn.[12] The first begins on FT 1:22-24.[13] *See* Appendix D, infra (indexing exhibits). Two section breaks and a column break on FT 2:3 follow the table. However, FT 2:4-7 is only *disguised* as a table; it is not *formatted* as one. Instead, FT 2:4-7 is a numbered list, separated from the remainder of the page by section breaks and a column break. The latter suggests that these lines were once a table (i.e., having columns) auto-generated with accurate page numbers, later edited manually by necessity to keep pace with deleting, reorganizing, and rewriting the transcript.

_____

[12] The Court may verify this in Word with CTRL+G, which opens the "Find and Replace" window in MS Word. The third tab, "Go To" enables the user to navigate tables.

[13] "Line" 25 on this page is actually part of the document's footers: an attempt to mimic the appearance of consecutively numbered lines.

The second hidden table, FT 153:20-25, is three columns wide and six rows long. *See* Appendix E, *infra*. Each cell of the table contains the EOCC, but inexplicably, the text of the question on FT 153:22 is split across two different cells with the word "company" isolated. Unnecessary whitespace results. This is because transcription without fraudulent editing creates three columns: one for the line number, one for the "Q" or "A," and one for the body of the question or answer. That this pattern did not hold for "company" may help explain why "Career" incredibly appears only once and does not reference actual work. FT 38:6 ("UM career"). It may have been a substitution for "carrier," which sounds close to "career." This may have occurred from the use of find-and-replace because I repeatedly testified that UF's extortion was on the cusp of destroying my career through their deliberate and admitted sabotage of this very hearing. This explanation meshes with Veritext's edits dealing with UF, e.g., Carol McMahon, Provost Joe Glover, and Professor Sarah Wolking.

Third, FT 170 is a table covering the whole page: three columns by eleven rows. Appendix F. It contains inappropriate questioning about Hamas and an objection, but the ruling is

missing. The first ten lines are squished in just two cells: one for line numbers and one for text. EOCCs are absent, but ordinary "text wrapping" (enabled by default in most word processors[14]) made paragraph symbols (i.e., the enter key) unnecessary. The opposite is the norm in the rest of the FT: paragraph symbols at the end almost every line. Furthermore, lines 16-17 on this page reach across six different cells of the table whereas the first ten lines on the very same page are in a single cell. Unlike most other sections of the purported transcript, none of these line numbers are formatted as a numbered list. Returning to FBBE's inappropriate questioning on Hamas, <u>FT 170:20-25</u>, paragraph symbols once again reign and "PRESIDING OFFICER DIERKING" is changed to "MR. DIERKING." The obvious editing of Mr. Dierking's title and the proximity to paragraph symbols confirm once again they reliably signal fraud.

The entire following page, <u>FT 171:1-25</u>, is a numbered list. Mr. Arias's objection has the following digital characteristics: indent

---

[14] Notably, text wrapping is not default in MS Notepad. A software vendor associated with Veritext returning a voicemail I left them 1/26/24 noted transcript text is often first exported to ASCII (which is the native format for Notepad).

12 px (pixels) from the left; hanging by 109 px; 14 px spacing before.[15] Contra, e.g., FT 170:1-10 (indented 18 px from the left, 4 px from the right, with "Special First line" by 52 px and no spacing before or after but with "Multiple" line spacing "at 1.71"). The effect of countless adjustments like this is to achieve an approximately consistent visual appearance, although even the casual observer will see unexpected white space from premature line breaks. These unexplained discrepancies demand a persuasive explanation to rebut the inference that they arose from covering the tracks of fraud.

The fourth table, FT 196:1-9, is also three columns wide and features EOCC validators in each cell. However, paragraph symbols float above each cell of the first row. This is because the spacing in the text needed to be realigned after fraudulent edits to match the rest of the document visually. Compare, e.g., FT 195:1 (paragraph symbol above "1" but no hidden table).

The last table outside the index is the Certificate. FT 274:1-8, discussed supra and infra. Appendix A.

_____

[15] Place cursor on the start of any line on FT 171:2-18; navigate "Paragraph" -> "Paragraph Settings" (popup window).

Thus, the inconsistent digital structure of the transcript's body, combined with its facial inconsistencies, demonstrate it is a fraud.

### C. **Digital Forensics in the Index**
### 1. **The Index's Digital Characteristics**

Turning to the final part of the transcript, the index is supposed to recount every word spoken throughout the entire 5-hour hearing. It does not achieve this aim, but it does further demonstrate the defendant's decision to perpetrate a fraud on the Florida Supreme Court with its phony transcript. For instance, FT 361|1 shows indexing by the court reporter's software and FT 361|2 shows manual alteration. Appendix B, infra. The former is comprised of EOCCs in individual cells and the latter is comprised of paragraph symbols smooshed into one larger cell. In column 1: (1) every entry is a distinct cell; (2) every cell ends with the EOCC; (3) every cell bears (i) alignment left, (ii) indentation left 25 px and right 0 px, (iii) spacing before of 1 px, and (iv) line spacing "exactly" 16.95 px. By contrast, entries under "Z" on FT 361|2 feature: (1) every word in one single cell; (2) paragraph symbols instead of EOCCs; (3) consistency with FT 361|1 as far as

(i)-(iii) but containing (iv) line spacing that is "single" without *any* number rather than "exactly" 16.95 px. One notable exception is under "Zionist," a prime target for manipulation. The line "64:18,22,24" is visibly misaligned when opened with Word and digital inspection reveals it is indented 46 px from the right. The line immediately following is 25 px from the left. This provides further evidence that manipulation of the transcript requires fine tuning the index, e.g., adjusting alignment to achieve the same visual effect. It also suggests manual editing affects the presence or absence of tables and EOCCs and favors the use of paragraph symbols. Similar to the body of the transcript, these discrepancies show fraud.

Although full treatment of the index is not practical here, another observation has explanatory power. On <u>FT 360|1</u>, every entry under "work" is in its own cell with its own EOCC until the last four, which share a cell and use paragraph symbols. However, before that, the line reading "187:14 189:21" specifies line spacing "single" rather than exactly 16.95. The following line ("207:1 216:23") returns to line spacing "exactly" but at 16.<u>4</u>5 px, not 16.<u>9</u>5. These discrepancies are most likely manmade considering a

"4" only looks like a "9" to a human. *Compare* <u>FT</u> 249:13 (what should probably be "SPM 1" is "SPM L" – one and lowercase L look almost identical in the font used).

Other irregularities, like blank spaces at the bottom of numerous columns, cry out for explanation. Compare <u>FT 279|1</u> (blank space under "advertise," "adversity," "adversities," and "adventure" – all allegedly only used once each, separated by paragraph symbols) with <u>FT 286|1,3</u> (blank spaces are simply empty cells) and <u>FT 286|2</u> (blank space is a cell with an entry but with larger formatted height value) and <u>FT 286|4</u> (blank space is a blank line of text in a larger cell that *could* fit another line but does not).

Thus, even the index shows subtle and glaring inconsistencies that become more alarming the longer they are studied because they show fraud.

## 2.    <u>The Index's Oversights and Omissions</u>

Returning to what can be seen with the naked eye, many words are used in the transcript but not in the index. These include the following, which cannot be explained by "passim" because they occur fewer times than the most-indexed words[16]: *all; though*[17];

*again; already; after; also; always; anyone[18]; ask[19]; away; because; before; been; both; cannot; can't; co-; could; done; down[20]; else[21]; elsewhere; end; enough; ever; every; everyone; few[22]; having; here; himself; its; let; many; may; might; most; myself; next; none; nothing; off; other; others; otherwise; per;[23] said; she's[24]; should; shouldn't; still; than; them; then;[25] us;[26] wouldn't; very; wasn't; we'll; when; whereas; whether; which; who; whole; whom; who's; whose; why; you're[27];* and *yourself.* This is likely due last-minute editing of testimony after the index was already compiled digitally.

The following words are in the transcript *and* the index but do not fit and do not lend themselves to innocent explanations:

---

[16] The word "think" is indexed approximately 150 times, so 150 is assumed to represent the upper bounds of "passim" in the court reporter's software. However, the term "passim" itself is never used.

[17] "All though" appears in place of "although" at least 24 times.

[18] "Anyone's" and "anyones" [sic] are both indexed.

[19] "Asked," "asking," and "asks" are all indexed.

[20] "Melt" is indexed after it was used once on FT 265:17, erroneously, instead of "meltdown."

[21] "Else's" is indexed on FT 300.

[22] "Fewer" is indexed on FT 304.

[23] This is despite the fact "se" is indexed on FT 342 at FT 49:13.

[24] "She'd" is indexed exactly once at FT167:12.

[25] Notably, "them" appears in place of "then" on FT 9:25.

[26] This is capitalized as though referring to the United States at FT 182:12 and FT 208:18, both times in place of "UF's."

[27] This appears as a typo for "your" in one instance on FT 178:25.

commentation [sic]; fucken[28] [sic]; manor[29] [sic]; retracted[30]; exist[31]; **underline**[32]; **underlining**;[33] quiting [sic][34]. The bolded entries are both unexpectedly in individual cells with an EOCC despite being repeated misspellings of "underlying" from FBBE's rules. The others listed do not bear these features.

The following are indexed far fewer times than were spoken: comparable; compel; compelled; cruel;[35] deceived[36]; diagnosed;

---

[28] My petition to the board had already alleged "Multiple exclamations of 'Fucking Zionist!'" before I received the transcript. This misspelling appears calculated to respond to this assertion given that it is the third and final instance transcribed.

[29] A misspelling of "manner," both of which appear exactly once, "manor" appears in the same paragraph on FT 169:4 in which "MR." [sic] appears, thusly capitalized. This is the only instance of "MR." other than signaling questioning. The neighborhood I live in, Lauderdale Manors, is not transcribed despite extensive testimony about the small business I run in it.

[30] Instead of "protracted" on FT 146:10.

[31] Indexed at FT 205:1, the subject is singular so the verb should be "exists." However, "exists" appears nowhere.

[32] FT 117:4 misstakes "underlying" for "underline" and also contains the plural agreement error "some factor [sic] that" rather than "factors." FT 161:15 mistakes "factors underlying the conduct" and displays "factors underline the comment." FT 253:16-17 displays "factor underline the conduct . . ."

[33] This word is used instead of "underlying" on FT 161:3 and FT 153:13. The consistent inability to reproduce "factors underlying the conduct" – language taken directly from this Court's rules – show intent.

[34] "Quitting" appears nowhere.

[35] The findings of fact reference my description of Professor Sarah Wolking's unethical and illegal misconduct as "cruel," and Mr.

diagnosis; disabled;[37] regrettable[38]; edited; editing; editor;[39] force;

forced; fought; Gregory;[40] hazed; he'll; **huatigan**[41]; inaccurate;

misleading;[42] judicial;[43] **know**;[44] **knows**;[45] justified; justify;

---

McElroy asked about her conduct extensively and my use of that word. In the index, "cruel" is not in an individual cell, and although it is followed by the EOCC, that is because it is the end of the column.

[36] The only use of "deceived," on FT 141:6, is agrammatical: "deceived that" instead of "deceived him [or them]."

[37] I took notes during the hearing and wrote this word and unknown others on the Hyatt Regency Stationery that disappeared when I used the bathroom.

[38] Indexed on FT 159:11, the same page displays "dreadful" on line 3 whereas the material Mr. McElroy was quoting from says "regrettable," as line 11 suggests. "Dreadful," in turn, is indexed only once and only here.

[39] The unknown edits made to the letter signed by Dean Inman were a major component of my testimony and discussion of the pertinent exhibits is largely deleted.

[40] The name of my younger brother, allegedly used only once.

[41] This is a misspelling of my supervisor and interviewer at Fort Lauderdale High School, Marie Hautigan. All of my testimony related to subsequent emails with her ratifying some of the errors on my job application to Broward Schools is deleted.

[42] "Inaccurate and misleading" is the standard supplied in federal regulations governing students' rights under FERPA to a hearing on their educational records. All discussion of this process and this standard was deleted.

[43] The term "Judicial Committee" is never used despite being present in the board's Findings of Fact. The terms "Judicial abuse" and "Judicial harassment" were replaced in one instance with "--". FT 174:12.

[44] Although "know" is among the most indexed words in the transcript, the filler "you know" appears about 70 times. Other fillers like "Um," "uh," and "huh" appear nowhere, although "Uh-huh" appears on FT 199:19 and both "uh" and "huh" are indexed

justification; justifiable; lead;[46] led; **loud**; **louder**; **loudly**; possibility; possibly; **underlying**;[47] precise; processed; processing; procedurally; procedure; PTSD; quoted; quotes; quoting; responsible[48]; sad; sadden[49]; sadly[50]; safe; safer; safety; some; someone; soon; team's[51]; unlawful[52]; unlearn; unmanageable;[53] **wrongly;**[54] victim; and victims.

Only the bolded entries are in individual cells with EOCCs in the index. This could be explained as representing high-value targets for fraud that Veritext put its top talent on, leaving less sophisticated actors to defraud readers in other instances.

---

[44] exactly once. "Oh" is indexed.

[45] This word supposedly appears just three times in 274 pages.

[46] The only instance, FT 167:11, is a misspelling of "led." This may have been a failure of find and replace software given the misspelling.

[47] This word appears once despite repeatedly mistaken uses of "underline," "underlining" and "underline" in its place.

[48] Extensive discussion about who is responsible for Mr. Bacharach's actions (me or him) is deleted.

[49] A typo for "saddened," this word is also a substitution: I testified that Dean Inman's letter "broke my heart."

[50] The word I actually used on FT 225:16 was "tragically."

[51] This word is indexed exactly once at FT 164:2 but FT 167:22 shows the error "teams" despite being possessive. A similar error appears at FT 182:12, which also replaces "UF's" with "US."

[52] Not used until FT 244.

[53] Not used until FT 204, this word is foundational to CoDA literature and other 12-step programs. Admitting that "our lives ha[ve] become unmanageable" is part of step 1.

[54] This appears on FT 76:14 and appears to contemplate the word "decided" coming next.

The following words are conspicuously absent from the transcript: *materially*[55]; *possible*;[56] *inspect*[57]; *retaliate*; *retaliation*; *retaliatory*;[58] *ruin*;[59] and *she'll*.[60]

## IV.  <u>Miscellany and Memory</u>

### A. <u>Transcript Invoice</u>

The invoice for the transcript of the formal hearing says "Proceeding Type: Meeting/Conference" despite being an adjudicative hearing subject to review by the Supreme Court of Florida. The cost ($2,536.75) is justified tersely: "Transcript Services." The investigative hearing transcript invoice from Marge Raeder, by contrast, accounted for "39 pages @5.00[.]" Marge Raeder also provided an invoice number and applicant ID on the document subsequently stamped "RECEIVED." Veritext's invoice

---

[55] Instead of "materially misleading," <u>FT 138:25-139:1</u> shows "material and misleading."

[56] Context suggests that the first sentence of <u>FT 117:6</u> should end with "as possible."

[57] FERPA regulations use the language "inspect and review," which I testified to repeatedly.

[58] The retaliatory and extortionate reply to my grievance under UF Regulation 4.012 is a major component of this case.

[59] UF's decision to ruin my career and my chances for admission by the board are major components of this case. Covering this up may also explain the change from "carrier" to "company" on <u>FT 153:22</u>.

[60] "She'd" is indexed, <u>FT 343|3</u>, but "she's" is not, despite appearing in the transcript nineteen times.

indicates only "Scheduling Atty: [blank] | Florida Board of Bar Examiners." It also says "Case: Florida Board of Bar Examiners v. [blank]." Opening the PDF with the Microsoft Edge browser allows use of the "Read Aloud" feature.[61] Doing so reveals that the entire following "text" is not recognizable by a computer: "Case: Florida Board of Bar Examiners v. [blank] Proceeding Type: Meeting/Conference / ... / Witness: CONF Formal Jonathan Harrington [blank] Amount." The Court should observe the visual fuzziness of this text, and, combined with its non-readability by a computer, conclude it has been manipulated. This would also explain Ms. Ruano's misunderstanding that her task was for "the Bar." The document may have originally said so, necessitating forgery a computer cannot read. Veritext ratified the invoice's authenticity by email and is thus liable for fraud.

Next, converting the PDF to a Word document reveals the entire document is an image, not text. Metadata shows the PDF was "created" by "Canon"[62] on 12/4/2023 at 11:28:39 AM and modified three seconds later. There is no indication what was modified or

---

[61] Click ellipses at the top left and select "Read Aloud."
[62] Likely the scanner manufacturing company, which may be programmed with this name by default.

why, let alone why "Delivery: Normal" involved a 45-day lag between the hearing and production of the invoice. In the transcript itself, the "Document properties" tab reveals that document was "Created on: 11/13/2023, 12:37:50 PM" by "Veritext" and "Modified" eleven seconds later. There is no indication how or why the transcript was created before the invoice, though it would be trivial to counterfeit this metadata.[63]

### B. <u>Linguistics</u>

After an English undergraduate degree, teaching, graduating UF law magna cum laud, and serving as an English professor, I reckon my English is pretty good. <u>FT 20:14</u>; <u>44:8</u>; <u>59:23</u>; <u>132:1</u> (using "whom" as the grammatical object). The index has the largest font to disguise the dearth of prolixity.

---

[63]Counterfeiting metadata to show this date could lead one to blame Veritext for any fraud found. Notably, I received the PDF well after the paper transcript and after I announced to the FBBE the forensic analysis that revealed the entire thing was a fraud and a forgery. That conclusion has never been disputed but was dramatically strengthened by the digital information encoded in the PDF.

## C. **Evidence Erased**

Although Veritext stole the Hyatt Regency Stationery I took notes on to prepare for their upcoming fraud, memory and strategy can reconstruct some of the deleted testimony.

I testified I believed my mother might have narcissistic personality disorder because she chose to not work but to feed her children out of dumpsters while splurging on beer and cigarettes. The words "cigarettes" and "narcissistic" vanished.

I testified about traumatic brain injury and MRI findings showing spots of damage in my brain. This testimony vanished in toto.

My attorney and I proceeded methodically through every single exhibit[64] as a principal part of my testimony. However, discussions of several[65] are missing. Carol McMahon, App. Ex. 22A-D, and Provost Joe Glover,[66] Id., OGC Ex. 17, escaped mention, as did

---

[64] FT 240:15-18 fraudulently rewrites and deletes my interruption as my attorney announced that our case was closed. I reminded him of a few more exhibits I had not testified about, leading to the testimony on FT 240-242.

[65] The most prominently removed bear on UF's violations of FERPA. Compare FT 142:3 (FERPA was such a significant part of the proceedings that I was asked to spell and define it).

[66] FT 181:19 displays "co-host Joe -- [sic]" where "Provost Joe Glover" should appear. An agent of this Court has gone through the evidence meticulously at times to correct spellings of names, such

Broward County Public Schools' ratification of my mistakes on their job application. <u>App. Ex. 30</u>.

The word "threatened" is hardly transcribed considering a past and present filled with documented threats, including extortionate threats by UF that were central to the hearing. <u>OGC Ex. 14</u> ("surely inform[ing] the [board's] further investigation"); <u>App. Ex. 16N</u> ("If I am disappointed by some of your actions now, I expect to be impressed by others later on, and any evaluative comments to the Bar will reflect the totality of that experience.")

Mr. McElroy's statement "I noticed that, too," which would have appeared after <u>FT 142:1</u>, is simply erased. Evidently Veritext understood our comparable attention to detail would reflect too well on me when I exposed their fraudulent transcript.

My testimony about a UF professor instructing my peers to "block [my] phone number" is erased but referenced in the findings that grew out of the hearing. <u>FF</u> at 44 (citing <u>App Ex. 16R</u>).

---

as differentiating Barbara from Barbora accurately. <u>FT 275</u> et seq. (index). However, they removed references to my roommates Hassan Johnson, for whom they left only the common surname, and Floyd Chidiadi Wadabli, whose name simply vanished.

Mr. McElroy questioned me about the email I wrote in 2016 cited on <u>FF</u> at 19 with the subject line "Lies, insults, and theft . . ." and about its contents, specifically, my reaction to being called a "liar and a thief." The word "thief" appears nowhere in the transcript despite childish recent allegations by UF about "stealing French fries." Relatedly, my testimony on <u>FT 60:6</u> regarding "French Fry *Gate*" is replaced with "french fry --". Compare, n. 67, supra. Although it may seem from the findings' citations like they probe beyond sheer testimony, citations to applicant exhibits that were "not" discussed in testimony show their deletions from the transcript.

Testimony about breaking up with my partner of three years just months before the hearing was deleted, and so was my testimony about driving to my brother Gregory's house in the middle of the night that I left her. When I arrived there, I found Steve Harrington (no relation) smoking drugs. Although he is referenced twice, <u>FT 21:14</u>; <u>FT 146:17</u>, none of this testimony is.

**D. <u>Rewrites</u>**

I rehearsed the testimony on <u>FT 116:22-24</u> during the entire 45-minute drive to Coral Gables the morning of the hearing. I did

not say "we don't have much evidence in the record, if any, for this . . ." because there was *no* evidence in the record whatsoever. I had just begun the program testified to three weeks prior, far too late to add into evidence under the hearing's procedures. This rewrite may explain why "myself" on <u>FT 116:25</u> and "any" on <u>FT 116:23</u> are not indexed and why <u>FT 116:22-117:5</u> is phrased so unnaturally.

Only fraud can explain <u>FT 175:16-21</u> because neither human nor machine error can. I had also rehearsed this testimony, anticipating hard questions about my service as a Guardian ad Litem (GAL). Counsel asked me if my training for 30 hours should count for rehabilitation since I was fired after just 3.5 on the job.[67] The question was phrased as whether the board "should consider[68]" any of these hours in light of the firing. I responded: "This committee[69] *should consider* it for the fact that I cannot even work for free -- in the face of these Specifications![70]" where the dashes set

---

[67] I asked for a character reference and my attorney said to show them the Specifications. I had disclosed most of them under applicable questions for hire. They did not say what precipitated the firing but said these charges were against the office's values, perhaps hinting at the FBBE's Zionist allegation.

[68] The word "should" is not in the index.

[69] Or, I used a close synonym.

off Mr. McElroy's interjection "Right," also deleted. This rewrite is simply fraud and is not a software error or a typo.

Substantial monologs by McElroy, such as his reading from my bar complaint against Wolking, are also deleted.

Mr. McElroy also asked me "What is hemp?" early in his cross-examination. Our entire discussion on the matter is rewritten, deleted, or dispersed into the web of fraud. "Hemp" is not in an individual cell containing EOCCs in the index, further confirming alteration. FT 311|2. In fact, no entries whatsoever on FT 311 are in cells or accompanied by EOCCs.

On FT 160:10, Veritext rewrote my testimony to impeach me in two years on reapplication, a commendable commitment to forward-facing fraud and forgery. I told the truth: I have shown animosity towards police officers as individuals. The FBBE can impeach the statement Veritext fabricated. This shows Veritext's

---

[70] No exclamation marks appear in the transcript but the number of exclamations of "fucking Zionist!" is reduced, including by changing a spelling to "fucken" – all indexed. Between the FH and receipt of the transcript, I had petitioned the FBBE for relief from the cost of the transcript and noted "repeated exclamations of 'fucking Zionist!'" in this inappropriately politicized hearing. My petition may have influenced the transcript, which had not yet been delivered to me.

intentionally setting a perjury trap to deter suit on their fraudulent misconduct.

On FT 164:10-15 the word "absurd" is replaced with "--" for reasons is Veritext is better positioned to explain.

On FT 167:19-20, Veritext rewrote my testimony identifying Ms. Wolking as an organizer and participant in the hazing that caused me to have a seizure. She did not "allow . . . hazing to occur[;]" she orchestrated it, including on my 28th birthday.

Questions and testimony on FT 172:6-13 and 176:23-177:5 are heavily manipulated. The exhibits referenced *did* equate "*anti*-Zionism" with "*anti*-racism" but did *not* equate "Zionism" with "racism." Whether the statements transcribed are logically or linguistically sound has no bearing on whether, when, or how they were said at the hearing. They were not. This portion of Veritext's fraudulently ascribing statements to me is, like others, far too inaccurate to be mere error.

On FT 182:4-9, my testimony is rewritten from "you've indicated your professors . . . are extorting you" to "you've vindicated your professors . . ." This is a subtle yet stunningly complete reversal of my testimony.

## **CONCLUSION**

In sum, rich sources of digital and other data prove beyond a shadow of a doubt that the entire transcript is a complete fraud and a forgery. Fraud can be seen on the transcript's face, and fraud is further proven by its digital sinew. Veritext further engaged in forgery by causing Mabel Ruano's signature to appear on the fraudulent transcript despite the fact that she was not even present for the hearing.

## **RELIEF SOUGHT**

**Wherefore,** JONATHAN HARRINGTON prays for this Court: (1) to order the defendant to pay damages of five-hundred million dollars ($500,000,000.00); (2) to order the defendant to produce the audio recording of the hearing before the FBBE with satisfactory proof it is not AI-generated to cover their tracks once again; (3) to publicly apologize to the People of Florida and the Florida Supreme Court for its fraud and forgery; and (4) to explain its motivation for doing so.

RESPECTFULLY SUBMITTED this 10nd day of June, 2024.

JONATHAN HARRINGTON
1701 NW 15th Ct., Ft. Lauderdale, FL 33311
Cell: (754) 551-1804
Plaintiff, *pro se*
Service Email: jonathanharrington94@gmail.com
/s/ Jonathan Harrington

## **Appendix A – Hidden Data in Certificate**

This reproduction of <u>FT 274</u> is not edited in any way but displays otherwise invisible data: table grid lines, EOCCs, paragraph symbols, and invisible text: "<%17385,Signature%>".



## **Appendix B – Hidden Data in the Index**

This reproduction of <u>FT 361</u> is not edited in any way but displays otherwise invisible data: table grid lines, EOCCs, and paragraph symbols.

## Appendix C –Ruano's 2020 Certification

This partial reproduction of the Certification Mabel Ruano signed in 2020 is unedited, displaying invisible data through the same methods described in this motion. No table appears, contra Appendix A, supra.



# Appendix D – Table of Exhibits; Formatted List of Examination



| | | | |
|---|---|---|---|
| | Board's Exhibit No. 1 through 7 | → Page: → 5¶ | |
| 22¤ | ¶<br>Office of General Counsel¤ | ¤ | |
| 23¤ | Exhibits 1 through 20¤ | ¤ | 14 |
| 24¤ | Applicant's Exhibit No. 1 through 48¤ | | 17 |
| 25 | | | |

Veritext Legal Solutions'

800-726-7007'                                                   305-376-8800'

| | | | Page · 2¶ |
|---|---|---|---|
| ¶ | ········Section Break (Continuous)········ | | |
| 1 → | WITNESSES:¶ | ¶ | |
| 2 → | JONATHAN HARRINGTON¶ | ¶ | |
| 3¶ | | ¶ | Page:¶ |
| 4 → | ········Column Break········<br>Examination by Mr. Arias | → | 17¶ |
| 5 → | Examination by Mr. McElroy | → | 137¶ |
| 6 → | Examination by Mr. Arias | → | 240¶ |
| 7 → | Examination by Mr. McElroy | → | 242¶ |

## <u>Appendix E – Table Formatting on FT 153:20-25</u>

This table may represent what a valid (or at least automated) transcript looks like when using Veritext's processes.

| 20¤ | A¤ | I'm·sorry,·I·don't.¤ |
| 21¤ | Q¤ | Let·me·ask·you·this. → What·insurance¤ |
| 22¤ | company¤ | did·you·have?¤ |
| 23¤ | A¤ | I·can't·remember.¤ |
| 24¤ | Q¤ | Was·USAA·one·of·them?¤ |
| 25¤ | A¤ | I·believe·so. → Yes.¤ |

Veritext·Legal·Solutions¶

800-726-7007¶                                                  305-376-8800¶

## **Appendix F – Objection With Ruling Deleted**

Borders are not shown on this page due to spacing but the highlighting and white space indicate the same presence of a tables and cells.

Page 170

| | |
|---|---|
| 1 | A → Yeah. → She also stated under oath at what |
| 2 | I would call the Kangaroo Court, I asked her |
| 3 | something to the affect of Ms. Saalmann if I were to |
| 4 | say to you the wording was cited different and what |
| 5 | I just testified that I just said, would that strike |
| 6 | you as a lie or we have a different -- a diversion |
| 7 | recollection? And she responded in the affirmative. |
| 8 | Q → You knew he was angry. → You baited him |
| 9 | already. → And then you used Zionist, Zionist as ugh, |
| 10 | next thing you're going to tell me is that you're a |
| 11 | Zionist. Wouldn't you agree in those words that |
| 12 | that is a slur? |
| 13 | A Absolutely not. |
| 14 | Q You said Bernie Sanders is a → Jew? |
| 15 | A That's my understanding. → Yes. |
| 16 | Q Is he a good Jew? → Does he support Zionism |
| 17 | or does he support Palestinian peace? |
| 18 | A I don't think it's a -- |
| 19 | MR. ARIAS: → I object to that question. → I |
| 20 | think it's not appropriate. |
| 21 | BY MR. MCELROY: |
| 22 | Q → I'll ask a different question. |
| 23 | MR. DIERKING: → Go ahead. |
| 24 | BY MR. MCELROY: |
| 25 | Q → Is Hamas, are they freedom fighters? |

38

Filing # 201984791 E-Filed 07/07/2024 01:26:45 PM

IN THE CIRCUIT COURT, ELEVENTH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2024-010642-CA-01

JONATHAN HARRINGTON

      Plaintiff,

v.

VERITEXT, LLC

      Defendant.

_____ /

## <u>PLAINTIFF JONATHAN HARRINGTON'S</u>
## <u>MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Rule 1.510(a), Florida Rules of Civil Procedure, Plaintiff JONATHAN

HARRINGTON requests this Court grant SUMMARY JUDGMENT on each claim raised in the

plaintiff's COMPLAINT because Defendant cannot deny any material allegation in it.

1. On June 10, 2024 Plaintiff sued Defendant for breach of contract, fraud, and forgery.

2. For the better part of a year, Defendant has perpetrated a fraud on the Florida Supreme Court.
   Defendant deceived the Court's agents, the Florida Board of Bar Examiners (FBBE), into
   relying on Defendant's phony transcript of a hearing that occurred before the FBBE,
   appealable to the Florida Supreme Court.

3. Defendant Veritext's victims, the FBBE, in fact relied on and cited to Defendant's fraudulent
   and forged record in signed pleadings before the Florida Supreme Court.

4. Defendant repeatedly and falsely reaffirmed the authenticity said record.

5. That record – the supposedly stenographic transcript of a quasi-judicial hearing – is a
   complete, unabashed, and shameless fraud *and* forgery, perpetrated with no remorse upon the
   Florida Board of Bar Examiners; the Florida Supreme Court; the People of Florida; and
   Plaintiff.

6.  On July 2, 2024, Defendant was served with legal process to face the civil consequences of its felony crimes.

7.  Defendant's ANSWER to the COMPLAINT is therefore due under Rule 1.140(a)(1) on July 22, 2024 ("defendant must serve an answer within 20 days after service of original process and the initial pleading").

8.  However, Plaintiff JONATHAN HARRINGTON's 38-page COMPLAINT is so detailed and meticulously cited – including with incontrovertible digital forensic proof  and proof apparent from the face of the document itself – that Defendant cannot possibly deny even a single word of it. No possible answer by Defendant will create any genuine dispute as to any material fact unless Defendant persists in its course of perpetrating frauds on the courts of Florida like it did in the instant case.

WHEREFORE, in light of Defendant's extremely heinous track record in this very matter of perpetrating a fraud on the highest court in Florida; and in light of the Defendant's inability to deny *any* material fact in the COMPLAINT, plaintiff JONATHAN HARRINGTON respectfully moves this Court to grant summary judgment in his favor.

Dated this 7th day of July 2024.

Respectfully submitted,

JONATHAN HARRINGTON, J.D.
/s/ Jonathan Harrington

Jonathanharrington94@gmail.com
(754) 551 – 1804
1701 NW 15th Ct.
Fort Lauderdale, FL 33311