IN THE FEDERAL DISTRICT COURT FOR

THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1-24-cv-22787-KMM

JONATHAN HARRINGTON

    Plaintiff,

v.

VERITEXT, LLC

    Defendant.

_____ /



FILED BY _____ D.C.

SEP 27 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## STATEMENT OF MATERIAL FACTS

### PRELIMINARY STATEMENT

1. Plaintiff, in and for the great State of Florida on behalf of her People, for purposes of a duly filed Motion for Summary Judgment under Fed. R. Civ. P. 56(a) and pursuant to Local Rule 56.1(a)(1), files this Statement of the Material Facts in the instant case, all of which facts movant contends are not genuinely disputed.

2. To the extent any fact is not present in the already-voluminous record, Plaintiff, pursuant to Fed. R. Civ. P. 56(c)(4), declares them herein based on personal knowledge.

3. Plaintiff observes that, pursuant to local rule, this document cannot exceed 10 pages and notes that the record evidence in the COMPLAINT, which has never been denied or contested, supplies even further evidence that Plaintiff is entitled to summary judgment as a matter of law than length limitations will allow herein.

### COUNT 1: BREACH OF CONTRACT THROUGH FRAUDULENT TRANSCRIPTION

4. DEFENDANT was hired to produce an accurate transcript of the Florida Board of Bar Examiners' (FBBE) hearing on Plaintiff's character which took place 10/20/23.

5. DEFENDANT entered a contract to do just that, either (1) with the FBBE, in which case Plaintiff was a known third-party beneficiary as the subject of the hearing testifying; or (2) with the Plaintiff directly as the person required to pay DEFENDANT's invoice by Supreme Court mandates DEFENDANT knew of or could have ascertained which formed part of any contract it had with the applicant or the agency. This is equivalent to saying DEFENDANT owed someone a contractual duty to record Plaintiff's testimony accurately and in good faith, to say nothing of its legal, ethical, or moral duties to do just that. .
6. DEFENDANT sent a court reporter to the hearing who transcribed the hearing.
7. The reporter was about 20 years younger than Mabel Ruano.
8. DEFENDANT or its agents altered the transcript prepared.
9. Mabel Ruano's signature was affixed to the transcript despite not being present.
10. The *entire* transcript is a *complete* fraud.
11. The transcript is also a forgery since Ms. Ruano was not present yet she signed as if she was.
12. DEFENDANT sent the fraudulent transcript to the FBBE along with an invoice.
13. The FBBE redacted the invoice, changed numbers on it, and sent it to Plaintiff for payment.
14. DEFENDANT's agents inspected the redacted invoice and endorsed it as genuine without taking any issue with its patent redactions.
15. The FBBE sent the fraudulent transcript to Plaintiff after he paid about a quarter of the amount invoiced by the redacted document.
16. The FBBE relied on the fraudulent transcript in fact-finding.
17. The FBBE used the fraudulent transcript to deny Plaintiff clearance to join the Florida Bar.
18. The transcript was the official record of the proceeding per Florida Supreme Court rules.
19. The FBBE instructed DEFENDANT not to correct any errors in the transcript nor to talk with Plaintiff about anything.
20. DEFENDANT obeyed the instructions the FBBE gave it even though …
21. … the FBBE lacked any discernable authority from its principal, law, or contract to issue such commands to DEFENDANT.
22. **Appendix A** of the COMPLAINT shows that DEFENDANT's fraudulent transcript includes the signature of notary Mabel Ruano accompanied by invisible text and a notary expiration date more than four years after the date purportedly signed, which is impossible under

2

Florida law. It shows her "CERTIFICATE" page on the complaint is an amalgamation of text, boxes, rows, and columns that demonstrates fraudulent editing of this page.

23. **Appendix C** is a "CERTIFICATE" page completed by Mabel Ruano in a completely unrelated case but also for Veritext. Her CERTIFICATION materially differs from the instant one in that she certified she was not interested in the outcome of that suit and represented that her CERTIFICATION does not apply to reproductions. No explanation has been proffered as to the material differences between these two CERTIFICATES which are both by the same notary and for the same principal, i.e., DEFENDANT.

24. Mabel Ruano *was* interested in the outcome of the case whose transcript she signed or was otherwise motivated, with Veritext's knowledge, authority, and blessing, to commit fraud and forgery.

25. In spite of Ms. Ruano's past practice as revealed in **Appendix C**, someone stamped "Certified Copy" on her work in the instant case. That person has never been revealed and did not cite any authority to certify anything.

26. Ms. Ruano does not certify that the transcript is complete.

27. The transcript is incomplete.

28. **Appendix B** shows wildly discordant use of metadata in the DEFENDANT's transcript's index with no rhyme or reason.

29. **Appendix B** shows DEFENDANT's transcript indexes are, as a rule, usually comprised of words in neat (but invisible) boxes followed by the invisible validator symbol called an "end-of-cell-character" ("EOCC"). It also shows manual editing of the index replaces EOCCs with paragraph symbols.

30. **Appendix D** demonstrates that what DEFENDANT represented to be an auto-created table of data in the transcript was actually manipulated by hand to *look* like a formatted table by using the tab key, resulting in right-facing arrows. An actual table is also excerpted for comparison.

31. **Appendix E** illustrates what digital forensic analysis shows the transcript should look like.

32. **Appendix F** shows no ruling given on an objection by the presiding chair even though the chair made such a ruling on the record.

33. The transcript features wildly reorganized and completely rewritten sections. COMPL. at 1-7 and *generally*.

34. The transcript features questions being re-ascribed to completely different panelists. COMPL. at 4.
35. The transcript completely rewrites portions of my sworn testimony. COMPL. at 20.
36. The transcript does not contain discussion of numerous exhibits in evidence even though every exhibit was testified to explicitly. COMPL. at 17.
37. The transcript contains numerous words which are never indexed. COMPL. at 13 et seq. ("The Index's Oversights and Omissions").
38. The transcript contains numerous misspellings which have no innocent explanation. Id.
39. The transcript changes between using the monikers "PRESIDING OFFICER DIERKING" and "MR. DIERKING" without explanation while simultaneously duplicating the text of his words. COMPL. at 3-4.
40. The transcript contains the random, unexplained text "AAA" and "BBB" as placeholders the fraudster used to mark their place but which tracks they forgot to remove. COMPL. at 4.
41. DEFENDANT perpetrated a fraud on the FBBE and the Florida Supreme Court with its fraudulent transcript. COMPL. *generally*.
42. DEFENDANT's lawyer claimed during a Rule 26 conference that DEFENDANT possesses a video recording of the hearing which, he said, verifies the accuracy of the transcript.
43. DEFENDANT has not produced that recording or any other despite repeated requests.
44. DEFENDANT video and audio record the entire hearing.
45. Any recording matching the transcript must be an AI-generated fraud since the transcript it matches is also a fraud.

## COUNT 2: UNJUST ENRICHMENT

46. Plaintiff asserts nakedly but in good faith that DEFENDANT would not have engaged in its criminal course of conduct if it were not bribed with something of value. COMPL. at 20.
47. DEFENDANT was thereby unjustly enriched by whatever it was bribed with, be it cash or access to foreign or domestic markets for its transcribing business, in addition to being enriched by free inspection of its work product, i.e., Plaintiff doing its job for DEFENDANT. COMPL. at 20.

## COUNT 3: CONVERSION

48. DEFENDANT sold me its fake transcript as if it were authentic. COMPL. at 15 (mentioning invoice).
49. DEFENDANT's fake transcript was worth less than nothing to Plaintff because it actively harmed Plaintiff. COMPL. *generally*.
50. DEFENDANT pocketed a substantial sum of money, in unknown amounts and from unknown sources, for producing a fraudulent transcript, in addition to the money it would have received (and likely did, wrongfully) for doing the job correctly and ethically. COMPL. at 15 (discussing invoice's deficiencies).

## COUNT 4: DEPRIVATION OF RIGHTS UNDER COLOR OF LAW CONTRARY TO 42 U.S.C. § 1983

51. DEFENDANT transcribes judicial proceedings like Plaintiff's hearing under the color of law. COMPL. *generally*.
52. DEFENDANT's defrauding Plaintiff by its transcript effectively deprived Plaintiff of due process in his bar admissions case. Due process includes the right to meaningful appellate review where appellate review is provided by law.
53. The fraudulent transcript heavily and inaccurately favors the FBBE's fact-finder because DEFENDANT had a financial incentive to earn and retain its business, although Plaintiff would have been forced to pay for it if not for discovering it was a fraud after getting a copy upon his first installment. Compl. *generally*.
54. DEFENDANT's transcript infringes Plaintiff's right to freedom of speech through DEFENDANT's abuse of the authority it exercised under color of law. Compl. *generally*.
55. DEFENDANT is more loyal to the extremist government of Israel than to America and sought to retaliate for Plaintiff's free speech outside of the hearing by partnering with the FBBE to advance their shared Zionist vision of keeping dissenters out of the practice of law in America. Compl. *generally;* and at 12, FN 28; and at 19, FN 70 (multiple exclamations of "FUCKING ZIONIST!" by FBBE counsel at the hearing) (asserted to have been fraudulently reduced to only three).
56. DEFENDANT deprived Plaintiff, an American citizen, of his constitutional rights in order to shield an ethnostate on the other side of the planet from even mild criticism like Plaintiff's use of the word "Zionist." Compl. *generally*.

5

57. DEFENDANT does substantial business in and for Israel.
58. DEFENDANT was pressured, directly or indirectly, by the government of Israel or its supporters to perpetrate a fraud on the Florida Supreme Court in exchange for access to the Israeli courts. Compl. *generally*.
59. DEFENDANT knew that its provision of its fake transcript under color of law would prompt Plaintiff to work diligently to disprove it. Compl. § II ("Digital Evidence of Fraud"), §§ I ("Methods") (original techniques developed by Plaintiff[1] in the instant case).
60. Plaintiff was conscripted to spend hundreds or perhaps over one thousand hours disproving DEFENDANT's fraudulent transcript. Id.; Compl. *generally*.
61. Plaintiff was never paid for the work DEFENDANT's actions under color of law forced him to do involuntarily. Id. & Docket *generally*.

## COUNT 5: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

62. DEFENDANT knew from the FBBE's rules it was hired to produce a fair transcript of Plaintiff's hearing before the FBBE for licensure as an attorney in Florida.
63. DEFENDANT knew a strained and fraudulent transcript, like the one it actually produced, would be materially prejudicial to Plaintiff's prospective business relationships with the Florida Supreme Court.
64. DEFENDANT's fraud actually did materially prejudice Plaintiff's business relationship with the Florida Supreme Court and the FBBE by causing the FBBE to wrongfully deny Plaintiff on the basis of DEFENDANT's phony document.
65. Plaintiff had a reasonable chance of success in establishing the business relationship with a fair and neutral transcript; he had no chance with DEFENDANT's fraud.

## COUNT 6-7: INVASION OF PRIVACY & DEFAMATION

66. All proceedings and papers before the FBBE are supposed to be confidential per its rules.
67. DEFENDANT knew or should have known a fraudulent transcript would result in suit thereon and that such a suit would necessarily involve publicly disclosing the contents of that transcript.

---

[1] Plaintiff intends to testify as an expert in the instant case if summary judgment is denied. See Fed. R. Civ. P. 26(f) conference notes, ECF [21]

68. DEFENDANT therefore wrongfully caused public disclosure of confidential information in the transcript by coercing Plaintiff into debunking it line-by-line in court filings. Ibid.
69. DEFENDANT's fake transcript falsely claims Plaintiff testified that he had disparaged police "as a group" in order to blackmail him. He admitted worse; they rewrote it for impeachment on reapplication as a "perjury trap." Compl. at 19. It was two years forward-facing. Id.
70. DEFENDANT fraudulently chose to completely rewrite this section at the FBBE's explicit direction in violation of its contract and federal common law duty.[2]
71. DEFENDANT, holding a monopoly on the official record of the proceeding under color of our state's law, defamed plaintiff as to any persons "knowing" Plaintiff "lied." No. 69, *supra*.
72. DEFENDANT likewise under color of law took Plaintiff's ability to tell the truth in the future forever. Id.
73. The forgoing has damaged Plaintiff's reputation and prospects for appeal and reapplying.
74. DEFENDANT's counsel published to the Court's docket confidential letters from the FBBE's immediate past general counsel which were sent to DEFENDANT and Plaintiff.

## COUNT 8: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

75. DEFENDANT knew or should have known that it was inflicting huge emotional distress.
76. Plaintiff suffered severe emotional distress from DEFENDANT's conduct.
77. DEFENDANT tricked armed police into showing up at my door under the guise of a "wellness check" in order to intimidate and harass me, further inflicting emotional distress, to say nothing of the distress caused by deliberately targeting my career.

## COUNT 9: PREJUDGMENT INTEREST

78. DEFENDANT's wrongs were completed when it delivered the fake transcript to the FBBE, although it still wrongfully refuses to correct its mistake despite their ethical obligation to correct material misapprehensions arising in admissions to the Bar.
79. DEFENDANT's liabilities in the instant case became fixed when Plaintiff deemed himself entitled to five hundred million dollars ($500,000,000.00) at the outset of the instant suit, so Plaintiff is entitled to prejudgment interest from the date of filing the instant lawsuit in state court for of the DEFENDANT's fake transcript.

7

## **PUNITIVE DAMAGES**

80. There is no genuine dispute of material fact relevant to the Court's punitive damages.
81. DEFENDANT's proven conduct is shocking, egregious, evil, fraudulent, and anti-American.
82. DEFENDANT's crimes disgrace our nation, state, judicial system, and the rule of Law.
83. Punitive damages are required to measure and deter DEFENDANT's heinous conduct and that by those like them.
84. DEFENDANT deserves the corporate death penalty because the allegations in the Complaint and the Material Facts in this filing are true.
85. DEFENDANT's "fucking Zionist" crimes resulted in Plaintiff's profaning this Court.

## **FLORIDA'S PLEA**

WHEREFORE, in light of Defendant's extremely heinous frauds and abuses in this matter; – in light of DEFENDANT's ongoing bad-faith ploys to delay even filing an answer; – in light of DEFENDANT's inability to deny even a single word of the COMPLAINT; – in light of this Court's responsibility to the State of Florida, the federal government, and the Nation; – in light of the overwhelmingly persuasive factual support found in the pleadings, which must assumed to be true for the purposes of a Rule 56(b) Motion; – and in light of the accompanying Rule 56(b) Motion; –Plaintiff, in the name of the great State of Florida, her People, and that People's Supreme Court, urges this federal Court to GRANT this MOTION and make DEFENDANT pay for what it did to Our State.

Dated this 26th day of September in 2024.

Respectfully submitted,

JONATHAN HARRINGTON, J.D.

/s/ Jonathan Harrington

Jonathanharrington94@gmail.com

(754) 551 – 1804

1701 NW 15th Ct.

Fort Lauderdale, FL 33311

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 26, 2024, service was made of the forgoing paper by CM/ECF by the clerk at the federal courthouse in Fort Lauderdale to the defendant's lawyer Gregory Hawran of Ogletree and also by email directly to that lawyer's electronic mailing address.

/s/ Jonathan Harrington