UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-22787-MOORE/Elfenbein

**JONATHAN HARRINGTON**,

    Plaintiff,

v.

**VERITEXT, LLC**,

    Defendant.

_____/

## ORDER FOLLOWING DISCOVERY HEARING

**THIS CAUSE** is before the Court on three matters: (1) Defendant Veritext, LLC's Amended Notice of Hearing (the "Notice"), in which Defendant alerted the Court that the Parties required the Court's assistance with two discovery disputes, ECF No. [67]; (2) Non-Party Florida Board of Bar Examiners' Expedited Motion for Protective Order (the "Board Motion"), ECF No. [68]; and (3) Non-Party Juan Carlos Arias' Motion for Protective Order (the "Arias Motion"), ECF No. [69].

In the Notice, Defendant asked to be heard "regarding the following discovery issues":

1. Defendant's Motion to Quash Plaintiff's Notice of Taking Deposition by Written Questions of Non-Party Juan Arias for failure to comply with procedures outlined in Fed. R. Civ. P. 30(c) and 31;

2. Defendant's Motion to Quash or for a Protective Order Preventing the Deposition of Mabel Ruano, including whether any fees connected to the motion should be awarded under Fed. R. Civ. P. 26(c) and 37(a)(5)(A).

*See* ECF No. [67] at 1. In the Board Motion, Non-Party Florida Board of Bar Examiners (the "Board") "moves for a protective order with respect to Plaintiff's Notice of Taking Depositions

of Juan Carlos Arias, Esq. [ECF No. 62] and Mabel Ruano [ECF No. 65] and Plaintiff's First Set of Interrogatories to Defendant Veritext, LLC ("Defendant") [ECF No. 36-2], First Set of Requests for Production from Defendant [ECF No. 36- 3], and First Set of Requests for Admission [ECF No. 36-4]." *See* ECF No. [68] at 1.  In the Arias Motion, Non-Party Juan Carlos Arias moves for a "Protective Order against Plaintiff's Notice of Taking Deposition by Written Questions of Non-Party, Juan Arias, [D.E. 64-2] pending the resolution of" Defendant's objection to that deposition as described in the Notice.  *See* ECF No. [69] at 1.

The Court held a combined hearing on the issues in the Notice, the Board Motion, and the Arias Motion on November 6, 2024 (the "Hearing").  *See* ECF No. [63]; ECF No. [70]; ECF No. [75].  At the Hearing, Defendant made two oral motions: (1) a motion to quash Plaintiff's deposition notice for Arias because the notice failed to comply with Federal Rules of Civil Procedure 30(c) and 31 (the "Arias Oral Motion"), *see* ECF No. [103]; and (2) a motion to quash Plaintiff's deposition of Ruano or, in the alternative, to issue a protective order preventing that deposition (the "Ruano Oral Motion"), *see* ECF No. [104].

The Court heard argument on the oral motions and issues, then took both oral motions and all the issues under advisement. The Court also gave the Parties, the Board, and Arias an opportunity to submit supplemental authorities relating to the Board Motion and the Arias Motion and ordered that those supplemental authorities be submitted by November 8, 2024.  *See* ECF No. [75]. Only the Board took the Court up on its offer and submitted a supplemental brief. *See* ECF No. [79].

Having reviewed the Parties' and Non-Parties' filings, including the Board's supplemental brief, and having considered the Parties' and Non-Parties' arguments, it is **ORDERED and ADJUDGED** as follows:

2

I. **The Board Motion, ECF No. [68]**

In the Board Motion, the Board contends that Plaintiff's discovery and deposition "requests seek information that is confidential under" Rule 1-61 of the Rules of the Supreme Court Relating to Admissions to The Bar (the "Bar Admission Rules") "and federal common law." *See* ECF No. [68] at 3–9. The Board argues that anything Arias (who was Plaintiff's lawyer at the Board Hearing that forms the basis of this lawsuit) and Ruano (who was the court reporter at the Board Hearing) would disclose in response to Plaintiff's discovery requests would be confidential because it would "focus on the content of the hearing transcript, what occurred at the Board hearing and whether the transcript accurately reflects what occurred at the hearing." *See* ECF No. [68] at 4–6. The Board also argues that disclosure of that information would be harmful because "the Board's investigative process would be impeded" and there is "the potential for disclosure of information concerning other Bar applicants." *See* ECF No. [68] at 6–7.

The Board asks the Court to limit Plaintiff's depositions of Arias and Ruano and Plaintiff's discovery requests to exclude information that is confidential under Bar Admission Rule 1-61. *See* ECF No. [68] at 10. According to the Board, that confidential information includes: (1) the testimony of Arias and Ruano "relating to what occurred during Plaintiff's hearing before the Board"; (2) "the audio of Plaintiff's hearing before the Board"; and (3) "emails exchanged between the Board and" Defendant "to the extent the emails reference particular applicants or anything that occurred during a hearing before the Board." *See* ECF No. [68] at 9. At the Hearing, the Board clarified that the discovery requests over which it seeks a protective order are Interrogatory Number 16, *see* ECF No. [36-2] at 4, and Requests for Production Numbers 6, 7, and 15, *see* ECF No. [36-3] at 2–3.

3

In response to the Board Motion, Plaintiff filed a "motion" partially opposing it (the "Response"). *See* ECF No. [72]. In the Response, Plaintiff concedes that the Board's "position has merit" but asserts that "the relief it seeks is much too broad." *See* ECF No. [72] at 2. Plaintiff argues that documents and audio files in Defendant's possession are not the Board's records, so they cannot be subject to Bar Admission Rule 1-61. *See* ECF No. [72] at 1–4. He argues that Bar Admission Rule 1-61 cannot apply to bar Arias and Ruano from testifying about their own "thoughts, knowledge, observations," and "recollections" about what happened at his hearing because that would lead to "absurd results." *See* ECF No. [72] at 2. And he argues Bar Admission Rule 1-61 is meant to be a shield, not a sword — that is, to protect applicants from having their private information disclosed, not to be a weapon for the Board. *See* ECF No. [72] at 3.

At the Court's invitation, the Board filed a Reply addressing whether any court had answered "the question of whether the confidentiality provision in" Bar Admission Rule 1-61 "applied to the types of disclosures that are at issue in the Board's Motion" (the "Board Reply"). *See* ECF No. [79] at 1. In the Board Reply, the Board notes that it was "unable to locate any decisional authority that addresses whether a court reporter for a Board hearing or an applicant's attorney would be required to maintain the confidentiality of information and documents obtained by virtue of their participation in a Board hearing" but argues that Bar Admission Rule 1-61 "does apply in these circumstances because (1) formal hearings before the Board are confidential; (2) [Bar Admission] Rule 1-61 applies not only to records related to formal hearings but matters discussed at formal hearings; and (3) [Bar Admission] Rule 1-61 applies to information obtained by third parties by virtue of their participation in formal hearings." *See* ECF No. [79] at 1–2.

The Board acknowledges that the "general rule governing formal hearings," Bar Admission Rule 3-23.2, is "silent on the issue of confidentiality" but notes that the rule governing formal hearings for disbarred/resigned applicants, Bar Admission Rule 3-22.7, "explicitly provides" that those hearings are open to the public, which the Board argues supports a conclusion that all other formal hearings are not. *See* ECF No. [79] at 2–3. The Board also notes it has "been the Board's practice, in fact, to keep an applicant's formal hearing closed to the public and confidential." *See* ECF No. [79] at 3. Similarly, the Board argues that the operative word in Bar Admission Rule 1-61 — "information" — encompasses more than just written records because the Bar Admission Rules use both terms and do not use them interchangeably. *See* ECF No. [79] at 4–5. Finally, the Board argues that third parties who obtain information "they otherwise would not be privy to" by "virtue of their participation" in Board hearings must keep that information confidential because it remains "the Board's work product," and if they were allowed to disclose it, Bar Admission "Rule 1-61 would be rendered meaningless." *See* ECF No. [79] at 5–9.

Bar Admission Rule 1-61 requires that, except as provided by the Bar Admission Rules or otherwise authorized by the Florida Supreme Court, "[a]ll information maintained by the [B]oard in the discharge of the responsibilities delegated to it by the Supreme Court of Florida is confidential." Fla. Bar Admiss. R. 1-61. As an initial matter, the Court notes that, like the Board, it did not find any case law addressing the question presented here. Still, the Florida Supreme Court has provided some useful foundational principles.

In a 1984 decision, for example, the Court explicitly "decline[d] to adopt the Board's proposal that the record of any applicant who appeals the Board's failure to recommend admission to the Bar be made public." *Fla. Bd. of Bar Exam'rs: Re: Amend. to Rules Relating to*

5

*Admission to the Bar, Art. III, Sec. 4 (Character & Fitness)*, 451 So. 2d 1384, 1384 (Fla. 1984). It did so because, as it explained: "Little, if anything, would be gained from such a rule, and much could be lost." *Id.* Seven years later, the Court interpreted what would become the core language of Bar Admission Rules 1-63.5 and 1-63.6 and held that the language

> entitles applicants only to copies of documents previously filed by them or on their behalf with the board with the written consent of the party submitting such documents, and copies of any documents or exhibits tendered to the board at an investigative or formal hearing before the board and the transcript of such hearings. The rules do not entitle an applicant to any records relied upon by the board in conducting an investigative hearing.

*Fla. Bd. of Bar Exam'rs Re: Interpretation of Art. I, Sec. 14d of Rules of Sup. Ct. Relating to Admissions to the Bar*, 581 So. 2d 895, 897 (Fla. 1991).

Five years after that, the Court rejected a suggestion by commentors to make "all records in the possession of the Board . . . open for inspection by the applicant and the public." *See Fla. Bd. of Bar Exam'rs re Amends. to Rules of Sup. Ct. of Fla. Relating to Admissions to the Bar*, 676 So. 2d 372, 374 (Fla. 1996). The Court explained its reasoning this way:

> We have previously expressed our concern that unless the Board's investigative files are held in confidence, many of those from whom the Board seeks information concerning applicants would be unwilling to candidly respond. Here, the Board has only proposed that documents filed on an applicant's behalf and which would be independently available to the applicant be accessible to the applicant without consent of the party submitting them. Documents not otherwise available to an applicant will still only be released with the written consent of the submitting party. Other documents in the possession of the Board shall remain confidential under the amended rule, and shall only be available to an applicant if tendered to the Board at an investigative or formal hearing. This is consistent with our prior interpretation of article I, section 14 and our previous determination that little, if anything, would be gained from such a rule making public the record of an applicant, and much could be lost.

*Id.* (alterations adopted, citations and quotation marks omitted).

Because Plaintiff is not asking this Court to make his whole Bar application record public, is not asking for the Board's investigative hearing records, and is asking for more than

6

just documents that are in the Board's possession, none of those decisions settle the matter here. They do, however, provide helpful context for the analysis, as they demonstrate that the Florida Supreme Court has consistently interpreted the confidentiality provisions of the Bar Admission Rules in favor of shielding — and against disclosing — the Board's records and documents.

Such an interpretation is also consistent with the distinction contained within the Bar Admission Rules for hearings involving those who seek admission to the Florida Bar versus those who were previously disbarred or resigned pending disciplinary proceedings before the Bar. As the Board points out in its Reply, Bar Admission Rule 3-23.2,[1] which governs formal hearings for applicants seeking admission to the Bar, makes no reference to whether such proceedings are public, whereas Bar Admission Rule 3-22.7,[2] which governs formal hearings for

---

[1] Bar Admission Rule 3-23.2 provides:

> Formal Hearing. Except as provided in rule 3-23.1, any applicant or registrant who receives Specifications is entitled to a formal hearing before the board, representation by counsel at his or her own expense, disclosure by the Office of General Counsel of its witness and exhibit lists, cross-examination of witnesses, presentation of witnesses and exhibits on his or her own behalf, and access to the board's subpoena power. After receipt of the answer to Specifications, the board will provide notice of the dates and locations available for the scheduling of the formal hearing. Formal hearings are conducted before a panel of the board that will consist of not fewer than 5 members. The formal hearing panel will consist of members of the board other than those who participated in the investigative hearing. This provision may be waived with the consent of the applicant or registrant. The weight to be given all testimony and exhibits received in evidence at a formal hearing must be considered and determined by the board. The board is not bound by technical rules of evidence at a formal hearing. A judgment of guilt to either a felony or misdemeanor will constitute conclusive proof of the criminal offense(s) charged. An order withholding adjudication of guilt of a charged felony will constitute conclusive proof of the criminal offense(s) charged. An order withholding adjudication of guilt of a charged misdemeanor will be admissible evidence of the criminal offense(s) charged. The admissibility of results of a polygraph examination will be in accordance with Florida law.

[2] By contrast, Bar Admission Rule 3-22.7 states:

> Public Hearing for Disbarred/Resigned Attorneys. All applicants who have been disbarred from the practice of law, or who have resigned pending disciplinary proceedings must appear before a quorum of the board for a formal hearing. The formal

disbarred/resigned attorneys, explicitly states such hearings are open to the public. *See* ECF No. [79] at 2–3. "Under the principle of statutory construction, *expressio unius est exclusio alterius*, the mention of one thing implies the exclusion of another." *SE Prop. Holdings, LLC v. Welch*, 65 F.4th 1335, 1344 (11th Cir. 2023) (quoting *Young v. Progressive Se. Ins. Co.*, 753 So. 2d 80, 85 (Fla. 2000)); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 99–102 (2012). Following this cannon, it stands to reason that the reference to the public nature of proceedings in Bar Admission Rule in 3-22.7 — "the hearing will be open to the public" — and the explicit reference to the record produced at the hearing being "public information and exempt from the confidentiality provision of rule 1-60" when compared to Bar Admission Rule 3-23.2's silence on the issue "implies the exclusion of another," meaning it implies that hearings and any records produced at hearings for those seeking initial admission to the Florida Bar are not open to the public and are, therefore confidential. *See LaCroix v. Town of Fort Myers Beach*, 38 F.4th 941, 949 (11th Cir. 2022) (citation and quotation marks omitted) (applying the cannon of *expression unius est exclusion alterius*). Consistent with the Florida Supreme Court's interpretation that the confidentiality provisions in the Bar Admission Rules support shielding the Board's records and documents from disclosure, statutory interpretation of Bar Admission Rules 3-23.2 and 3-22.7 under the cannon of *expressio unius est exclusio alterius* further support the notion that formal hearings for applicants seeking admission to the Florida Bar are confidential.

With that background, the Court turns to the issue at hand — interpreting Bar Admission Rule 1-61, which, to recap, provides that "[a]ll information maintained by the [B]oard in the

---

hearing will be open to the public, and the record produced at the hearing and the Findings of Fact and Conclusions of Law are public information and exempt from the confidentiality provision of rule 1-60.

discharge of the responsibilities delegated to it by the Supreme Court of Florida is confidential," except as provided by the Bar Admission Rules or otherwise authorized by the Florida Supreme Court. *See* Fla. Bar Admiss. R. 1-61. To begin, the Court agrees with the Board that the term "information," as used in Bar Admission Rule 1-61, encompasses more than records. A look at the ordinary meaning of the words as well as the Bar Admission Rules as a whole make clear that when those Rules use the term "information," it means something different than when the Rules use the term "records" or the closely related term "documents."

In its analysis of Bar Admission Rule 1-61, the Court begins with "the most fundamental semantic rule of interpretation," "the ordinary-meaning canon." *United States v. Garcon*, 54 F.4th 1274, 1277–78 (11th Cir. 2022), *abrogated on other grounds by*, *Pulsifer v. United States*, 601 U.S. 124 (2024) (alterations adopted, citations and quotation marks omitted). "The command of the canon is simple: our job is to interpret the words consistent with their ordinary meaning at the time Congress enacted the statute unless the context in which the words appear suggests some other meaning." *Id.*; *see also* Scalia & Garner, *supra*, at 74–79 ("Words are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense."). Starting with the ordinary meaning of the word "information," it means "knowledge obtained from investigation, study, or instruction." *See information*, https://www.merriam-webster.com/dictionary/information (last visited Dec. 10, 2024). By comparison, the ordinary meaning of the word "records" is "something that records: such as" "the official copy of the papers used in a law case." *See records*, https://www.merriam-webster.com/dictionary/records (last visited Dec. 10, 2024). And, the ordinary meaning of the term "documents" is "something (such as a photograph or a recording) that serves as evidence or proof." *See documents*, https://www.merriam-webster.com/dictionary/documents (last visited

9

Dec. 10, 2024). Thus, the term "information," by its ordinary meaning, is much broader than the term "records" or "documents," and it cannot be assumed that the Bar Admission Rules intend to use such terms interchangeably.

Indeed, an analysis of the Bar Admission Rules reveal that they use the word "information" in some places while using the terms "records" and "documents" in other places, further supporting the idea that these terms each carry different meaning. *See* Scalia & Garner, *supra*, at 147–49 ("[W]here the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea."). For example, within the same "Confidentiality" section where Rule 1-61 is found, Rule 1-63 explains when the Board "is authorized to disclose *information* relating to an individual" applicant. *See* Fla. Bar Admiss. R. 1-63 (emphasis added). If a member of the public requests "information," the Board can "confirm if a person has filed" a Bar or Bar Exam application and can "provide the date of admission of any attorney admitted to The Florida Bar." *See* Fla. Bar Admiss. R. 1-63.1. Importantly, that data is information that can be, but does not have to be, part of a written record or document. The same is true of the "information" the Board can disclose to third parties during an applicant's background information; it includes the applicant's name, birthdate, address, and social security number — details that, again, can be, but do not have to be, part of a written record or document.[3] *See* Fla. Bar Admiss. R. 1-63.8.

Conversely, Rule 1-63.5 and Rule 1-63.6 explain when an applicant can request copies of certain documents or other tangible things, including: (1) documents previously filed by them, on their behalf, or at the Board's request; (2) "documents or exhibits formally introduced into the record at an investigative or formal hearing before the" Board; and (3) "the transcript of

---

[3] This is also true of the information the Board is permitted to disclose to the "national data bank operated by, or on behalf of, the National Conference of Bar Examiners." *See* Fla. Bar Admiss. R. 1-63.2.

hearings." *See* Fla. Bar Admiss. R. 1-63.5; Fla. Bar Admiss. R. 1-63.6.  Likewise, Rule 1-62 explains that the Board is the "custodian" of all "records" connected with Bar applications, including "registrant and applicant files, investigative reports, examination materials, and interoffice memoranda," *see* Fla. Bar Admiss. R. 1-62, all of which are tangible things.  The fact that Rules 1-63.5 and 1-63.6 talk about documents and exhibits under the general umbrella of Rule 1-63's guidance about when the Board "is authorized to disclose *information* relating to an individual" supports a conclusion that the correct interpretation of the term "information" in the Bar Admission Rules covers more than does the term "documents."  The same is true of Rule 1-62's reference to "records" under the general umbrella of Rule 1-61's "information."

But perhaps the clearest support for that conclusion is found in Rule 1-65. Titled "Disclosure of Information," Rule 1-65 provides: "Unless otherwise ordered by the Supreme Court of Florida, the chair of the [B]oard, or the presiding officer at a hearing before the [B]oard, nothing in these [R]ules prohibits any applicant or witness from disclosing the existence or nature of any proceeding under [R]ule 3, or from disclosing any documents or correspondence served on, submitted by, or provided to the applicant or witness."[4]  *See* Fla. Bar Admiss. R. 1-65.[5]  By referring to both ideas (like the mere existence or nature of a proceeding) and documents (like correspondence) within a Rule explicitly labelled as being about "information,"

---

[4] Rule 3 pertains to background investigations, *see* Fla. Bar Admiss. R. 3, and covers Specification hearings like the one that forms the basis of this lawsuit, *see* Fla. Bar Admiss. R. 3-23.

[5] At the Hearing, the Court asked the Board to explain how Bar Admission Rule 1-65 (which allows applicants and Board hearing witnesses to disclose the existence and nature of the hearing along with any documents they submit, are served, or are provided) interacts with Bar Admission Rule 1-64 (which notes that any person who intentionally and without authority discloses confidential information maintained by the Board "may be in contempt" of the Board). The Board's position was that Rule 1-65 is intended to allow applicants to confer with witnesses to prepare for the hearing but that any such conferral does not turn the information shared into public record. The Court does not opine on the proper interplay of Rules 1-64 and 1-65, but it does note that, even if Rule 1-65 transforms certain information into public record, it would not resolve the issues here because Ruano and Arias are neither applicants nor witnesses.

Rule 1-65 demonstrates that the term "information" in the Bar Admission Rules is broader than ideas, documents, or other tangible things. Rule 1-72 demonstrates the same relationship applies to the term "information" and records. *See* Fla. Bar Admiss. R. 1-72 ("Records, statements of opinion, and other information regarding an applicant for admission to The Florida Bar, communicated without malice to the board, its members, employees, or agents by any entity, including any person, firm, or institution, are privileged, and civil suits for damages predicated on those communications may not be instituted.").

The Court also agrees with the Board that it does not have to keep information itself for information to be "maintained by" the Board for purposes of Bar Admission Rule 1-61. Because of the confidential nature of the information the Board is charged with maintaining, *see* Fla. Bar Admiss. R. 1-61, the relationship between the Board and its agents is analogous to the relationship between a lawyer and a nonlawyer employee.

Courts have long recognized that nonlawyer employees are "privy to confidential communications" even if they "make no lawyerlike decisions" and do not "counsel clients." *See Esquire Care, Inc. v. Maguire*, 532 So. 2d 740, 741 (Fla. 2d DCA 1988). So has the Florida Bar's ethics counsel, which has noted in an Ethics Advisory Opinion that "nonlawyer employees necessarily share in confidential and secret information." *See Stewart v. Bee-Dee Neon & Signs, Inc.*, 751 So. 2d 196, 202 (Fla. 1st DCA 2000) (quoting Fla. Bar Ethics Op. 86–5). The ABA's Committee on Professional Ethics agrees. *See id.* at 204 (referring to an ABA Ethics Opinion advising that "lawyers are required to maintain procedures designed to protect client information from disclosure by the lawyer's employees and agents," including "all nonlawyer personnel in a law firm who have access to material information relating to the representation of clients," even "agents who technically may be independent contractors, such as investigators" (quotation marks

omitted)).

For that reason, courts, the Florida Bar's ethics counsel, and the ABA Committee on Professional Ethics have all concluded that nonlawyer employees "necessarily share the attorney's ethical obligation not to disclose or use such information." *See id.* at 203 (quoting Fla. Bar Ethics Op. 86–5); *id.* at 204 (referring to 67 ABA/BNA Lawyers' Manual on Professional Conduct 901:318 (Aug. 31, 1988), ABA Informal Opinion 88–1526 (June 22, 1988): *Imputed Disqualification Arising From Change in Employment By Nonlawyer Employees*); *id.* at 204–05, 207 (adopting the ethics committees' standards). And Florida courts have made clear that nonlawyer employees consist of "any nonlawyer assistant," including "any paralegal, legal assistant, secretary, clerk, law student intern, investigator, or other person who is employed or retained by or associated with a lawyer in the representation of a client." *See id.* at 208 n.4 (quotation marks omitted); *cf. Est. of Stephens ex rel. Clark v. Galen Health Care Inc.*, 911 So. 2d 277, 282 (Fla. 2d DCA 2005) (concluding that a "doctor is not revealing a patient's confidential patient information . . . simply by discussing information obtained in the course of employment with employees or agents within a certain chain of health care communication—for instance with hospital management responsible for setting standards of care").

Putting those principles together, the Court finds that employees or agents employed or retained by the Board to assist it "in the discharge of the responsibilities delegated to it by the Supreme Court of Florida" share in the Board's duty of confidentiality. *See* Fla. Bar Admiss. R. 1-61. The Bar Admission Rules themselves support this finding, as they include the Board's "members, employees, and agents" within the immunity from civil liability for damages that protects the Board's "conduct and communications occurring in the performance and within the scope of their official duties relating to . . . character and fitness qualification." *See* Fla. Bar

Admiss. R. 1-71; *cf.* Fla. Bar Admiss. R. 1-72 ("Records, statements of opinion, and other information regarding an applicant for admission to The Florida Bar, communicated without malice to the board, its members, employees, or agents by any entity, including any person, firm, or institution, are privileged, and civil suits for damages predicated on those communications may not be instituted."). If the Board's employees and agents share the benefit of the Board's liability protection for the work they do, it makes sense that those employees and agents would also share the Board's confidentiality burden.[6]

Applying those findings to the facts of this case, the Court concludes that the Board's confidentiality burden extends to Mabel Ruano, the court reporter it hired to transcribe Plaintiff's hearing. For that reason, Ruano's deposition and any discovery requests concerning her must be limited to exclude any information that is confidential under Rule 1-61. Accordingly, the Board Motion, **ECF No. [68]**, as it relates to Ruano, is **GRANTED**. As it relates to Ruano's deposition, Plaintiff is prohibited from asking about any information Ruano learned only by virtue of her participation in Plaintiff's Board hearing, but Plaintiff is not prohibited from asking about any information Ruano learned before, after, or apart from that hearing. As it relates to Plaintiff's discovery requests, Defendant does not have to answer Interrogatory Number 16, *see* ECF No. [36-2] at 4, or respond to Requests for Production Numbers 6,[7] 7, and 15, *see* ECF No. [36-3] at

---

[6] In reaching this conclusion, the Court is only interpreting Bar Admission Rule 1-61 for purposes of this discovery dispute. The Court is not deciding any issues involving the merits of the claims in the case or otherwise interpreting Bar Admission Rule 1-71.

[7] Request for Production Number 6 asks for "any preliminary or intermediate drafts of the transcript of the hearing." *See* ECF No. [36-3] at 2. While Bar Admission Rule 1-63.5 allows applicants to receive "the transcript of hearings," the Rule is silent on whether applicants can receive drafts of hearing transcripts. *See* Fla. Bar Admiss. R. 1-63.5. As a result, the Court must decide whether the phrase "the transcript of hearings" in Rule 1-63.5 contemplates only the finalized transcript of each hearing or includes within it preliminary or draft versions.

2–3.

That conclusion does not apply to Juan Carlos Arias, however, because Arias was not the Board's agent at Plaintiff's hearing. Instead, as Plaintiff's lawyer, he was Plaintiff's agent. But reasoning from the case law the Board provided in its Reply supports a parallel conclusion: that the Board's confidentiality burden extends to Arias for any information he learned in Plaintiff's hearing because he acquired that information only by virtue of being allowed to participate in the hearing. *See Henry v. Att'y Gen., Ala.*, 45 F.4th 1272, 1276 (11th Cir. 2022); *cf. Mayer v. State*, 523 So. 2d 1171, 1176 (Fla. 2d DCA 1988) (affirming the contempt conviction of a reporter who published information she acquired from a confidential hearing she was permitted to attend only because she agreed to the court's confidentiality conditions).

In *Henry*, the Eleventh Circuit held that a grand jury witness could disclose any information he learned before his grand jury testimony but could not disclose any information "he learned only by virtue of being made a witness." *See* 45 F.4th at 1276. Borrowing reasoning from the United States Supreme Court, the Eleventh Circuit explained that information obtained from grand jury proceedings was analogous to information "obtained through civil discovery." *Id.* at 1286 (alteration adopted) (quoting *Butterworth v. Smith*, 494 U.S. 624, 631 (1990)). And

---

The Court interprets "the transcript of hearings" to mean only the finalized transcript of each hearing, for at least two reasons. First, the phrase uses a definite article ("the") instead of an indefinite article ("a") or a distributive adjective ("any" or "all"). Definite articles refer to one specific object, *see definite article*, https://www.merriam-webster.com/dictionary/definite%20article (last visited Dec. 10, 2024) (defining definite article as "the word *the* used in English to refer to a person or thing that is identified or specified"), which cuts against a conclusion that Rule 1-63.5 should be read to include multiple draft versions of a transcript. Second, given the Florida Supreme Court's consistent broad interpretation of the Bar Admission Rules' confidentiality provisions, the better reading of any ambiguous Rule is one that results in limiting disclosure and keeping information confidential, not disclosing it. *See Fla. Bd. of Bar Exam'rs re Amends. to Rules of Sup. Ct. of Fla. Relating to Admissions to the Bar*, 676 So. 2d at 374; *Fla. Bd. of Bar Exam'rs: Re: Amend. to Rules Relating to Admission to the Bar, Art. III, Sec. 4 (Character & Fitness)*, 451 So. 2d at 1384. Put simply, the guiding interpretative principle of the Florida Supreme Court seems to be: information is by default confidential, so any provision purporting to allow information to be disclosed must be explicit and clear.

the Supreme Court had concluded it "did not offend the First Amendment . . . to prohibit a newspaper from publishing information which it had obtained through discovery procedures." *Id.* (quotation marks omitted). With that principle in mind, the Eleventh Circuit weighed the State's interests in keeping its grand jury proceedings confidential against the plaintiff's asserted First Amendment right to disclose information he learned in the grand jury room and concluded that "the balance weighs in favor of continued confidentiality in grand jury information a witness learned by virtue of being made a witness." *Id.* at 1284.

Applying that reasoning to this case, the Court concludes that the Board's confidentiality burden extends to Arias as to any information he learned by virtue of being allowed to participate in Plaintiff's Board hearing. Like grand jury proceedings, Board hearings of Bar applicants who have received Specifications are confidential.[8] *Compare* Fla. Bar Admiss. R. 3-23.2 (providing for formal hearings of applicants who have received Specifications but not deeming those hearings public), *with* Fla. Bar Admiss. R. 3-22.7 (providing for formal hearings of applicants who have been disbarred or resigned pending disciplinary proceedings and explicitly deeming those hearings open to the public); *see also* Fla. Bar Admiss. R. 1-61. So it follows that the information a Board hearing participant obtains only by virtue of participating in that hearing is also analogous to information obtained through civil discovery.

If it does not offend the First Amendment to prohibit disclosure of information obtained

---

[8] Legal analysts, including a former Chief Justice of the Florida Supreme Court, have recognized this principle. *See* Justice Harry Lee Anstead et al., *The Operation and Jurisdiction of the Supreme Court of Florida*, 29 Nova L. Rev. 431, 562 (2005) ("Bar admission cases are usually confidential, though a few are occasionally made public and published in *Southern Second*, often with the applicant identified only by initials." (footnote omitted)); Keith W. Rizzardi, *Honor the Oath: Florida's Constitution and the Need for Bar Examiner Reform*, 52 Stetson L. Rev. 1, 3 (2022) ("[I]n Florida, nearly everything related to bar admission is confidential unless declared otherwise. . . . Remarkably, even the applicants' access to *their own files* is limited." (footnote omitted)); Keith W. Rizzardi, *Excess Confidentiality: Must Bar Examiners Defy Administrative Law and Judicial Transparency?*, 34 Geo. J. Legal Ethics 423, 435–37, 485 (2021).

16

through discovery procedures, it cannot offend whatever non-constitutional rights a Board hearing participant may have in disclosing information obtained only by virtue of participating in that hearing — at least not so greatly that the balance weighs in favor of disclosure instead of continued confidentiality. *See Henry*, 45 F.4th at 1286; *Butterworth*, 494 U.S. at 631–32. For that reason, Arias's deposition and any discovery requests concerning him must be limited to exclude any information that is confidential under Rule 1-61. Accordingly, the Board Motion, **ECF No. [68]**, as it relates to Arias, is **GRANTED**. As it relates to Arias's deposition, Plaintiff is prohibited from asking about any information Arias learned only by virtue of his participation in Plaintiff's Board hearing, but Plaintiff is not prohibited from asking about any information Arias learned before, after, or apart from that hearing.

II. <u>**The Arias Oral Motion, ECF No. [103]**</u>

In the Arias Oral Motion, Defendant asked the Court to quash Plaintiff's Notice of Taking Deposition by Written Questions of Non-Party Juan Arias for failure to comply with the procedures outlined in Federal Rules of Civil Procedure 30(c) and 31. At the Hearing, Defendant explained that Plaintiff's notice of deposition made clear that Plaintiff intended for Arias to provide written responses to the deposition questions and that those written responses would then be notarized. *See* ECF No. [67-2]. The notarized written responses would then be considered a deposition "transcript." *See* ECF No. [67-2].

Defendant argued that this procedure does not comport with Rules 30(c) and 31, which allow for depositions by written questions but still require those questions to be asked of and answered by the deponent aloud and in real time. *See* Fed. R. Civ. P. 30(c); Fed. R. Civ. P. 31; *accord Lopez v. Horel*, No. C06-4772SI(pr), 2007 WL 2177460, at *2 n.2 (N.D. Cal. July 27, 2007) (outlining the procedure step-by-step for a Rule 31 deposition by written questions);

*Karimkhani v. Real Time Resolutions, Inc.*, No. 18-730-JGB-KK, 2019 WL 6139160, at *4 (C.D. Cal. Aug. 2, 2019). Defendant noted that it does not object to conducting Rule 31 depositions by written questions, but it asserted that Plaintiff must follow the proper procedure when taking those Rule 31 depositions.

In response, Plaintiff acknowledged that Defendant's description of his intended procedure was accurate. He argued that a literal reading of Rule 31's text permits his intended procedure and that the case law Defendant submitted in support of its argument was outdated and not binding. On questioning from the Court, Plaintiff acknowledged that he had no case law supporting his reading of Rule 31 to allow his intended procedure.

As explained at the Hearing, the Court agrees with Defendant. While the text of Rule 31 does not explain the procedure explicitly, in practice Rule 31 requires the court reporter to read out loud to the deponent the direct, cross, and redirect questions the parties have written and submitted in advance. *See Lopez*, 2007 WL 2177460, at *2 n.2; *Karimkhani*, 2019 WL 6139160, at *4. The deponent then answers those questions out loud and under oath while the court reporter transcribes the oral answers, just as the reporter would do in a Rule 30 deposition by oral examination. *See Lopez*, 2007 WL 2177460, at *2 n.2; *Karimkhani*, 2019 WL 6139160, at *4. The only real difference between a Rule 30 deposition and a Rule 31 deposition is that there is no opportunity for spontaneous follow-up questions in a Rule 31 deposition. *See Lopez*, 2007 WL 2177460, at *2 n.2.

For that reason, the Court finds that Plaintiff's notice of deposition to Non-Party Arias does not comport with either the spirit or the practical reality of Rule 31. Accordingly, the Arias Oral Motion, **ECF No. [103]**, is **GRANTED**. Plaintiff must re-notice the deposition in a format that complies with Rule 31 and conduct the deposition in accordance with the proper Rule 31

procedure, as the Court explained at the Hearing and again above. *See Lopez*, 2007 WL 2177460, at *2 n.2; *Karimkhani*, 2019 WL 6139160, at *4.

### III. The Ruano Oral Motion, ECF No. [104]

In the Ruano Oral Motion, Defendant asked the Court to quash Ruano's deposition or, in the alternative, to issue a protective order preventing that deposition. At the Hearing, Defendant explained that Plaintiff noticed Ruano's deposition for a date that defense counsel was unavailable and refused to change the date even after defense counsel provided him with four alternate dates on which defense counsel was available. In response, Plaintiff asserted that Local Rule 26.1(h) requires only seven days' notice to schedule a deposition and argued that the dates defense counsel provided were "months and months" away. Plaintiff also questioned whether defense counsel was being truthful about his availability.

After hearing the Parties' arguments, the Court instructed them to work together to choose a tentative date for Ruano's deposition if the Court concluded that it could go forward in some fashion upon resolving the Board Motion. The Parties agreed to do so, and a November 7, 2024 notice Plaintiff filed on the docket indicates that they did. *See* ECF No. [76]. As a result, the Ruano Oral Motion has become moot. Accordingly, the Ruano Oral Motion, as it relates to the scheduling of Ruano's deposition, **ECF No. [104]**, is **DENIED AS MOOT**.

Defendant also asked the Court to consider awarding fees connected to the Ruano Oral Motion under Federal Rule of Civil Procedure 26(c) and 37(a)(5)(A). As explained at the Hearing, the Court declines to award any fees. The Ruano Oral Motion was not the only issue addressed at the Hearing; in fact, the Ruano Oral Motion took up mere minutes of an hour-long argument. Accordingly, the Ruano Oral Motion, as it relates to the request for Rule 37 fees, **ECF No. [104]**, is **DENIED**.

### IV. The Arias Motion, ECF No. [69]

In the Arias Motion, Non-Party Arias seeks a protective order only "pending the resolution of the matter . . . not[ic]ed for hearing" on November 6. *See* ECF No. [69] at 2. The matters noticed for hearing on November 6 included the Board Motion, the Arias Oral Motion, and the Ruano Oral Motion. *See* ECF No. [67]; ECF No. [70]. The Arias Motion explains that the Court's ruling on those matters would give Arias "clarity" about the scope of his obligation to respond to Plaintiff's discovery. *See* ECF No. [69] at 2. Because the Court has now resolved the Board Motion, the Arias Oral Motion, and the Ruano Oral Motion, Non-Party Arias presumably has the clarity he was seeking. Accordingly, the Arias Motion, **ECF No. [69]**, is **DENIED AS MOOT**.

**DONE and ORDERED** in Chambers in Miami, Florida on December 10, 2024.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record

Jonathan Harrington
1701 S.W. 15th Court
Fort Lauderdale, FL 33311
*PRO SE*